UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JULIE LORRAINE HILL,

        Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of the Social Security
Administration,

        Defendant.

CAUSE NO. 2:20-CV-6 DRL

## OPINION & ORDER

Julie Lorraine Hill appeals from the Social Security Commissioner's judgment denying her application for disability insurance under Title II and Title XVI of the Social Security Act, *see* 42 U.S.C. §§ 405(g), 1383(c)(3). Ms. Hill requests remand of her claims for further consideration. Having reviewed the underlying record and the parties' arguments, the court remands this case.

## BACKGROUND

Ms. Hill alleged disability as a result of her osteoarthritis, chronic joint pain, ACL reconstruction, and depression (R. 68, 100, 125). She stopped working in 2014 because of these conditions. On June 30, 2016, she filed a Title II application and a Title XVI application for benefits, claiming a disability onset date of February 1, 2014 (R. 10).

Her claims were heard at an administrative hearing by Administrative Law Judge Jeanette Schrand on August 27, 2018 (R. 10). In a December 3, 2018 decision, the ALJ denied Ms. Hill's petition because she could not show that she was disabled as defined by the Social Security Act (R. 10-20). Thereafter, Ms. Hill timely challenged the decision by filing a request for review with the Appeals Council (R. 234). After the Council denied her request (R. 1), Ms. Hill timely filed a complaint here.

STANDARD

The court has authority to review the ALJ's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusions," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do his impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform his former occupation; (5) is the claimant unable to perform any other work in the national economy given his age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, where the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

The ALJ found that Ms. Hill hadn't engaged in gainful activity since February 1, 2014 (R. 12). At step two, the ALJ found Ms. Hill has the following severe impairments: obesity, status-post left knee replacement, history of ACL repair of the right knee, status-post right hip replacement, and mild facet arthropathy of the lumbar spine (R. 12). At step three, the ALJ found none of these severe impairments met or equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ thereafter found Ms. Hill's residual functional capacity (RFC) to be as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs; occasionally balance and stoop; and never crouch, kneel or crawl. The claimant can have occasional exposure to wet, slippery, and uneven walking surfaces; and occasional exposure to hazards, such as unprotected heights. The claimant must use a cane for ambulation and balance but can still use her contralateral upper extremity to lift and carry up to the exertional limits.

(R. 15). At step four, the ALJ determined, based on her RFC findings, that Ms. Hill was capable of performing past relevant work as a billing representative and a check cashier (R. 19). Because of this determination at step four, the ALJ denied Ms. Hill benefits.

Ms. Hill argues four reasons for remand: (1) the ALJ incorrectly made an independent medical determination, (2) the ALJ incorrectly assessed her physical RFC, (3) the ALJ incorrectly assessed her mental RFC, and (4) the ALJ incorrectly assessed her subjective complaints. The court agrees in part and remands the case.

To begin, an ALJ isn't required to mention every piece of evidence, *see Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008), but an ALJ cannot ignore entire lines of contrary evidence, *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012), especially that of a treating source. Treating sources are entitled to deference and must be weighed using all the factors provided in 20 C.F.R. § 404.1527. An ALJ's decision to accept one physician's opinion over another's without consideration of the factors is reason for reversal. *See Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Even if there are sound reasons for refusing to give a source controlling weight, an ALJ is still required to determine what

3

weight the assessment merits. *See Scott v. Astrue*, 637 F.3d 734, 740 (7th Cir. 2011); *see Scrogham v. Colvin*, 765 F.3d 685, 697 n.48 (7th Cir. 2014) (ignoring the treatment records of several treating physicians is not harmless).

Turning to Ms. Hill's first argument, she says the ALJ erred by giving little weight to the treating physicians who opined that she needed to elevate her legs periodically. Specifically, the ALJ gave little weight to treating physicians Dr. Judson Wood, Dr. Daksha Vyas, and nurse practitioner Elizabeth Marcotte, FNP (R. 19). In May 2016, Ms. Hill saw Ms. Marcotte twice for follow-up appointments regarding her left knee x-ray and continued pain (R. 395, 403). Ms. Marcotte recommended both times "apply ice, elevate the leg" (R. 398, 403). The ALJ gave little weight to her opinion because it is inconsistent with the record. She says there's no record of any continued swelling in Ms. Hill's leg after she underwent surgery. *See* R. 18 citing R. 581 ("the wound is well-healed no sign of effusion range of motion satisfactory").

In July 2018, after Ms. Hill's total knee replacement (April 2017), Dr. Wood filled out a questionnaire confirming that Ms. Hill complained of severe constant pain and that she can only sit for two hours in an eight-hour workday (R. 903). Dr. Wood also wrote that Ms. Hill should elevate the leg 75% of an eight-hour day (R. 904). In August 2018, Dr. Vyas completed a similar questionnaire to Dr. Wood (R. 899). He opined that Ms. Hill could sit for less than one hour in an eight-hour workday and would need to elevate her leg 90% of the workday (*id.*). Both doctors opined that Ms. Hill would need to be absent more than three days a month (R. 901, 905).

The ALJ decided to assign Dr. Wood's and Dr. Vyas' opinions little weight because "they are inconsistent with the record" (R. 19). Specifically, the ALJ cited Dr. Wood's description that Ms. Hill didn't display effusion in November 2016 (R. 581), evidence Ms. Hill admitted doing well after the knee replacement, and his July 2018 report when Dr. Wood said Ms. Hill was doing "relatively well" other than "leg discrepancy" (R. 927).

ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves. *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018); *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding where the ALJ "play[ed] doctor" by summarizing the MRI results without subjecting them to professional medical scrutiny). "Common sense can mislead; lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990).

The ALJ in this case didn't just discount the medical opinion of a treating physician, she discounted three medical professionals' opinions, but particularly two physicians closer in time. She based this on her belief that because there was no evidence of swelling in Ms. Hill's knee after her surgery, she didn't need to elevate her leg throughout the day. That conclusion requires an interpretation and a determination of "particular medical findings themselves." *See Lambert*, 896 F.3d at 774. The ALJ played doctor by inferring that elevation should only be conducted if there is documented swelling. Two doctors in this case provided opinions that Ms. Hill needed to elevate her leg throughout the day—whether that is because of swelling, pain, or another medical phenomenon, it's not for an ALJ to decide.

Notably, the ALJ didn't explain why the lack of swelling was inconsistent with Ms. Hill's treating care providers' opinions that she must elevate her legs. *See Dante v. Colvin*, 2013 U.S. Dist. LEXIS 116076, 29 (N.D. Ill. Aug. 16, 2013) (explaining that claimant's elevation of her leg could have mitigated the swelling and that's why it didn't show at her doctor's appointments). Even in Ms. Marcotte's treatment of Ms. Hill, there was no evidence of swelling (or complaints of swelling) but elevation and icing was still recommended.

The ALJ also didn't consider that Ms. Hill needed to elevate her legs to manage pain and not necessarily swelling. Instead, the ALJ concluded, without explanation, that lack of swelling meant elevation wasn't necessary. There may be other medically sound reasons for a doctor to recommend

elevation, including for comfort, treatment, or alleviation of pain. In fact, Ms. Hill testified she needed to adjust between standing and elevating her legs to manage pain (R. 68). Her daughter reported that Ms. Hill sat frequently to elevate her knee because of pain (R. 272). The ALJ thus substituted her interpretation of the medical evidence with that of the treating physicians.

Along the same lines, it is error for an ALJ to ignore findings that support a treating physician's opinion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015). Despite the ALJ's conclusion that Dr. Woods' and Dr. Vyas' opinions were inconsistent with the record, there is evidence in the record supporting these opinions. The ALJ didn't explain the reason for rejecting it. Ms. Hill testified that she frequently elevated her legs at home and while riding in a car (R. 76-77). She said sitting is painful (*id.*). Her daughter confirmed she sat frequently to elevate her legs because of her pain (R. 272). She also had some "minimal swelling" in her knee within a year of her first surgery, as detailed in 2017 physical therapy examinations (R. 805, 810, 816).

More particularly, the ALJ didn't marshal the factors to build a logical bridge for giving little weight to Ms. Hill's physicians. *See Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). She cited 20 C.F.R. § 404.1527 certainly, but it appears her conclusion was based merely on inconsistency with the record, and specific to swelling (R. 19). That is not a logical bridge that permits meaningful review here.

All these reasons support remand for a reconsideration of Ms. Hill's treating physicians' opinions. *See Smith v. Astrue*, 467 Fed. Appx. 507, 511 (7th Cir. 2012) ("This error cannot be deemed harmless because we cannot say with great confidence that the result would be the same on remand . . . . The ALJ never considered [the claimant's] RFC in light of her alleged need to elevate her leg or asked the VE how a leg-elevation requirement would affect [the claimant's] job prospects.") (quotations and citations omitted).

Likewise, on remand the ALJ should consider Dr. Wood's and Dr. Vyas' opinions concerning Ms. Hill's absences from work and whether they are consistent with the rest of the evidence. The vocational expert testified that competitive standards do not tolerate more than two absences a month, but Dr. Wood and Dr. Vyas testified that Ms. Hill would miss three (R. 91-92).

Next, the ALJ didn't include any sitting limitations in the RFC assessment because "there is nothing to support that the claimant had increased pain with sitting other than her own allegations at the hearing" (R. 18). The ALJ gave some weight to consultative examiner Dr. J. Smejkal's opinion that Ms. Hill could sit, stand and walk but not for long periods of time (R. 551). The ALJ concluded that this is generally consistent with the record and afforded Dr. Smejkal's opinion "some weight" (R. 18). The ALJ doesn't resolve this apparent conflict between assigning Dr. Smejkal's opinion some weight and concluding there is nothing to support Ms. Hill's allegations of her sitting limitations. Therefore, the ALJ didn't create the appropriate logical bridge between the evidence and her conclusions. *See Thomas*, 745 F.3d at 806.

In weighing this evidence on remand concerning Ms. Hill's sitting limitations, the ALJ should take care to examine the evidence in support of such limitations and fully explain her reasons for rejecting or crediting that evidence. Ms. Hill reported low-back pain and arthritis that increased with or without activity (R. 626). The Commissioner didn't think this would affect her ability to sit but concluded that Ms. Hill's May 2016 appointment that revealed "only" mild degenerative changes and facet arthropathy meant she could sit fine. The Commissioner, and ALJ, shouldn't pick and choose the evidence that supports one conclusion but instead should discuss the inconsistent evidence and explain why it's being rejected or accepted. This includes Ms. Hill's obesity, which may have an effect on her sitting limitations. *See Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014). Given the evidence in the record of Ms. Hill's complaints, the numerous doctor notes documenting her pain and limitations, and Dr. Smejkal's opinion, the ALJ's RFC is not substantially supported, at least not as

described in the ALJ's opinion. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ"). Whether this court would reach the same conclusion after weighing the evidence, the court cannot say; that task is for the ALJ. *See Rucker v. Astrue*, 414 F. Appx. 844, 845 (7th Cir. 2011) ("weighing evidence and deciding facts are the purview of the Social Security Administration, not the federal courts").

Furthermore, the ALJ will have to engage in a reweighing of Ms. Hill's subjective complaints in compliance with the rest of this opinion. Given the ALJ's error in evaluating Ms. Hill's sitting limitations and the opinions of Dr. Vyas and Dr. Wood, her testimony and subjective complaints may be deserving of reconsideration on remand. *See Underwood v. Astrue*, 430 F. Appx. 532, 535 (7th Cir. 2011) ("the ALJ is the factfinder in a disability proceeding—it is for him to weigh evidence and determine credibility"). The court makes no determination on that issue in light of the need to remand otherwise.

Finally, regarding Ms. Hill's mental RFC, the ALJ erred by not discussing the evidence showing Ms. Hill's side effects to her medication and for again not assigning weight, after consideration of the factors, to her treating physicians. Ms. Hill testified to having difficulty remembering, concentrating, and staying on task due to her medication (R. 68-69). She said her medication made her fatigued, lethargic, and drowsy (R. 390). The ALJ doesn't mention her side effects to her medication in assessing her mental RFC, or anywhere in her opinion. *See Kinsey-McHenry v. Colvin,* 2013 U.S. Dist. LEXIS 140466, 27 (N.D. Ind. Sep. 30, 2013) (Cherry, J.) (remanding on other grounds but advising the ALJ to discuss the side effects of the claimant's medications).

The ALJ gave great weight to the opinions of State agency consultants, Dr. Maura Clark and Dr. William Shipley, who found Ms. Hill only had mild limitations in maintaining concentration,

8

persistence, or pace (R. 13). Ms. Hill's treating physicians, Dr. Wood and Dr. Vyas, opined she had constant and severe pain that interfered with her concentration (R. 899, 903). Given these individuals' treating physician status, long and frequent treatment relationship, supportability through clinical observations and objective testing, and consistency with other opinions, the ALJ should have at least discussed these factors in assigning them weight. *See* C.F.R. § 404.1527(c); *Gerstner*, 879 F.3d at 263. That discussion is missing from the ALJ's opinion; and, though not every factor need be discussed, a logical bridge must be developed. *See Schreiber v. Colvin*, 519 F. Appx. 951, 959 (7th Cir. 2013).

The Commissioner also makes no mention of Dr. Wood's and Dr. Vyas' opinions in his response to Ms. Hill's argument for crediting them. *See Arnett*, 676 F.3d at 592 (ALJ cannot simply ignore entire lines of contrary evidence). Yet, both doctors treated Ms. Hill for approximately two years, with Mr. Wood seeing her monthly (R. 898, 902). Similar to other instances on this record, the ALJ afforded these treating physicians' opinions little weight without properly saying why. Accordingly, on remand the ALJ should reweigh the evidence in determining Ms. Hill's mental RFC.

## CONCLUSION

The court finds that because the ALJ improperly interpreted medical evidence, considered medical opinion evidence from treating source physicians without consideration of relevant factors, and didn't build a logical bridge from the evidence to her conclusion, remand is required in this case. The court accordingly REMANDS the case to the ALJ to conduct another administrative proceeding consistent with this opinion.

SO ORDERED.

October 23, 2020    *s/ Damon R. Leichty*
                    Judge, United States District Court